UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROCK S. WILSON and
MOUNTAIN STATE LAND TITLE,
P.L.L.C., a West Virginia
professional limited liability
company,

     Plaintiffs

v.                                                  CIVIL ACTION NO. 2:07-0478

LIBERTY INSURANCE UNDERWRITERS,
INC.; LIBERTY MUTUAL INSURANCE
COMPANY; and LIBERTY INTERNATIONAL
UNDERWRITERS,

     Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

     Pending is the motion to dismiss of defendants Liberty
Insurance Underwriters, Inc. ("Liberty"); Liberty Mutual
Insurance Company ("Mutual"); and Liberty International
Underwriters ("International"), filed August 3, 2007.


I.


     Plaintiffs Rock S. Wilson and Mountain State Land Title
Company provide professional title services.  (Compl. ¶¶ 2, 9).
Defendants provide plaintiffs' professional liability insurance
coverage.  (<u>Id.</u> ¶ 7).  Mutual is the parent entity of Liberty and
International.  (<u>Id.</u> ¶ 4).  Liberty and International share

employees and perform services for each other.  (Id. ¶ 5).

The parties' insurance contract states that defendants have an "obligation to pay on behalf of the plaintiffs all damages the plaintiff [sic] becomes legally obligated to pay." (Id. ¶ 27).  The contract also provides defendants with the "right to make any investigation the defendants deem necessary and with the plaintiffs' consent, [to] settle any claim covered by the terms of the insurance policy."  (Id. ¶ 24).

In April of 2003, John and Terry Knox retained plaintiffs to examine and certify the title to real property, which the Knoxes wished to purchase.  (Id. ¶ 9).  Plaintiffs prepared a title report, certification, and deed, and the Knoxes purchased the property.  (Id. ¶ 12).  In providing these services, plaintiffs failed to discover a judgment lien against the property.  (Id. ¶ 13).  Thus, this lien was not disclosed to the Knoxes before they purchased the property.  (Id.).

Plaintiffs learned of the potential for a claim against them by the Knoxes in late August of 2003 and alerted defendants. (Id. ¶ 14).  Defendants allegedly acknowledged the potential claim but took little or no action to investigate or resolve it. (Id. ¶¶ 15, 17).

2

Throughout the next year, the Knoxes attempted several times to resolve their claims. (<u>Id.</u> ¶ 18).  It is not clear from the complaint whether the Knoxes attempted to settle within plaintiffs' policy limits.  Plaintiffs allege that defendants took no action to "amicably and promptly resolve the claims . . . regardless of the clear liability against the plaintiffs in favor of John and Terry Knox."  (<u>Id.</u> ¶ 19).

The Knoxes instituted an action (the "underlying action") against the plaintiffs in state court in early August of 2004. (<u>Id.</u> ¶ 20).  The underlying action was resolved on or around October 31, 2005.  (<u>Id.</u> ¶¶ 22-23).  It is not clear from the language of the complaint whether this action was terminated by settlement or by court action.  Defendants assert that the Knoxes' claims were settled by the defendants for "far less than policy limits." (Defs.' Mem. Supp. Mot. 3-4).

Plaintiffs instituted an action against the defendants in the Kanawha County Circuit Court on July 10, 2007.  The complaint alleges three counts against defendants: breach of contract, breach of the duty of good faith and fair dealing, and violation of the West Virginia Unfair Claims Settlement Practices Act.  (Compl. ¶¶ 26-43).  Generally, the plaintiffs maintain that

the underlying action "was only filed as a direct and proximate result of the defendants' failure to promptly investigate and settle the claims against the plaintiffs asserted by Mr. and Mrs. Knox."  (Id. ¶ 21).  The action was removed on diversity grounds on August 3, 2007.

II.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S.Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  Twombly,

4

127 S.Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 127 S.Ct. at 1965.  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.

Application of the Rule 12(b)(6) standard also requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (quoting <u>Twombly</u>, 127 S.Ct. at 1965); <u>see also</u> <u>S.C. Dept. of Health & Envt'l Control v. Commerce & Indus. Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." <u>Edwards v. Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

III.


A.  Breach of Contract


        In Count I, plaintiffs assert the following:

        27. The defendants, pursuant to the insurance policy
        purchased by the plaintiffs, have the contractual
        obligation to pay on behalf of the plaintiffs all
        damages the plaintiff [sic] becomes legally obligated
        to pay.

        28. The defendants' refusal to investigate and settle
        the claims against the plaintiffs is a breach of said
        insurance contract.

        29. As a direct and proximate result of said breach,
        the plaintiffs have been deprived of the contracted
        benefits of the insurance policy which said breach
        resulted in injuries and damages to the plaintiffs.

(Id. ¶¶ 27-29).  Additionally, in an earlier paragraph of the

complaint, plaintiffs assert that the terms of the contract gave

defendants a "right to make any investigation the defendants deem

necessary and with the plaintiffs' consent, settle any claim

covered by the terms of the insurance policy."  (Id. ¶ 24).

Reading the allegations from a plaintiff-centered perspective and

drawing all inferences in plaintiffs' favor, it appears that

plaintiff is attempting to plead a breach of the duty to defend,

as recognized by the West Virginia Supreme Court of Appeals in

6

<u>Aetna Casualty & Surety Co. v. Pitrolo</u>, 342 W. Va. 190, 342 S.E.2d 156 (1986).

Most insurance contracts include a duty to defend clause.  <u>Tackett v. Am. Motorist Ins. Co.</u>, 213 W. Va. 524, 528, 584 S.E.2d 158, 162 (2003).  These clauses permit an insured to recover under breach of contract for expenses from third party litigation where the insurer failed to defend the insured without valid justification.  <u>Pitrolo</u>, 342 S.E.2d at 159.  This duty does not merely impose obligations on the insurer at trial; rather, it also "encompasses investigation and negotiation of any settlement prior to trial."  22-136 <u>Appleman on Insurance</u> § 136.1.

The terms of the insurance contract define the scope of the insurance coverage as well as the existence of the insurer's duty to defend.  <u>Tackett v. Am. Motorist Ins. Co.</u>, 213 W. Va. 524, 528, 584 S.E.2d 158, 162 (2003).  In determining the extent of an insurer's duty to defend, the court considers whether the allegations in the complaint in the underlying action are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."  <u>Id.</u>  Where there is doubt about the existence or extent of the insurer's duty to defend, the terms of the policy must be construed liberally in favor of the insured.  <u>Id.</u> at 163.

It is not clear from the facts alleged in the complaint whether the insurance contract imposed upon the defendants a duty to defend.  However, language giving an insurer the right to investigate and settle is usually accompanied by such a duty. 22-136 <u>Appleman on Insurance</u> § 136.1 (stating insurer's duty to defend and right to control defense are corollaries).  Thus, the court, construing the terms of the policy and the allegations in the complaint in a light most favorable to the plaintiff, finds that plaintiff has offered sufficient facts to suggest the existence of a contractual duty to defend.

Additionally, the complaint states that the insurance provided was professional liability insurance, that the underlying claim arose in the course of offering professional services for a client, and that "the claims asserted against the plaintiffs by Mr. and Mrs. Knox were covered by the terms of the policy." (Compl. ¶¶ 7, 13, 24).  In view of these allegations, the court also finds that plaintiffs have alleged facts suggesting that the underlying action arose within the scope of defendants' duty to defend.

Finally, the court finds that plaintiffs have alleged facts suggesting conduct which may amount to a breach of

defendants' duty to defend, namely, that defendants were aware of the underlying action and took few or no steps to investigate or attempt to settle the action despite numerous opportunities to do so.  (Id. ¶ 14-23).

        Defendants also contend that West Virginia does not recognize an action for failure by an insurer to promptly investigate and settle claims against the insured where the insurer has ultimately paid on the claim on behalf of the policyholder.  (Defs.' Mem. Supp. Mot. 5 (citing Hartwell v. Marquez, 201 W. Va. 433, 441, 498 S.E.2d 1, 9 (1997)).  As discussed above, West Virginia recognizes the duty to defend, and leading commentators suggest that the scope of this duty includes pretrial conduct such as investigation and negotiation.  See Pitrolo, 342 S.E.2d 156; 22-136 Appleman on Insurance § 136.1. The effect of defendants' payment on the claim is a question of fact that is better suited for the summary judgment phase than for a 12(b)(6) motion.

        Accordingly, the court finds that plaintiffs' Count I breach of contract claim is sufficient to survive defendants' motion to dismiss.

9

B.  Breach of Duty of Good Faith and Fair Dealing

        Plaintiffs allege in Count II that defendants owed a
duty of good faith and fair dealing, that "their conduct"
breached this duty, and that plaintiffs were denied "the benefits
guaranteed by the insurance policies, West Virginia law and the
Regulations of the West Virginia Insurance Commissioner."
(Compl. ¶¶ 31-35).  Plaintiffs further assert that the
defendants' conduct proximately caused and contributed to
plaintiffs' damages.  (Id. ¶¶ 36, 38).  Finally, plaintiffs
assert that defendants actions were "intentional, malicious,
willful, oppressive and otherwise reflected a conscious disregard
for the statutory, contractual and common law rights of the
plaintiffs and were done with a deliberate intent to injure and
harm the plaintiffs."  (Id. ¶ 37).  Defendants counter that no
claim has been stated because West Virginia does not recognize
such a claim where the policyholder suffers no extra-contractual
liability. (Defs.' Mem. Supp. Mot. 3-4).

        The West Virginia Supreme Court of Appeals articulated
the standard for breach of the implied duties of good faith and
fair dealing in Shamblin v. Nationwide Mutual Insurance Co., 183
W. Va. 585, 396 S.E.2d 766 (1990).  A plaintiff must show that

10

the insurer had an opportunity to settle within policy limits,
that the settlement would have released the plaintiff from any
and all personal liability, that the insurer failed to settle,
and that the plaintiff suffered personal liability for an excess
verdict as a result of the insurer's failure.  Id. at 776;
Strahin v. Sullivan, 220 W. Va. 329, 647 S.E.2d 765, 771 (2007)
(stating "to recover under Shamblin, there must be not only a
negligent refusal to accept a settlement offer by the insurer,
but also subsequent harm to the insured.  In other words, the
insured's personal assets must be at risk.").  Such a scenario
constitutes a prima facie case of bad faith and shifts the burden
of persuasion to the insurer.  Shamblin, 396 S.E.2d at 776.

> Accordingly, it is then the insurer's burden to prove:

> by clear and convincing evidence that it attempted in
> good faith to negotiate a settlement, that any failure
> to enter into a settlement where the opportunity to do
> so existed was based on reasonable and substantial
> grounds, and that it accorded the interests and rights
> of the insured at least as great a respect as its own.

Id.  Finally, an insured who can also prove that the insurer's
conduct was willful, malicious, and intentional will be able to
recover punitive damages in addition to traditional tort related
damages.  Poling v. Motorist Mut. Ins. Co., 192 W. Va. 46, 450
S.E.2d 635, 635 (1994).

11

Plaintiffs' complaint states that "plaintiffs have been damaged," but it does not offer any facts tending to show how they were damaged. (Compl. ¶ 36). Specifically, it does not suggest any facts indicating, as required by Strahin, that plaintiffs suffered personal liability for an excess verdict.[1] See Strahin, 647 S.E.2d at 771. Inasmuch as Twombly requires plaintiffs to state more than mere labels, conclusions, and formulaic recitations of elements, plaintiffs' bare assertion that it has been injured, without more, is insufficient. See Twombly, 127 S.Ct. at 1956. Accordingly, Count II fails to state a claim and is dismissed.

C.  West Virginia Unfair Claims Settlement Practices Act

In Count III, plaintiffs allege that defendants owed a statutory duty under the Unfair Claims Settlement Practices Act ("UCSPA"), West Virginia Code § 33-11-4(9), to promptly investigate and resolve all claims presented against the plaintiffs, that defendants breached this duty, and that

---

[1] As earlier noted, defendants assert that the case was settled for less than policy limits. (Defs.' Mem. Supp. Mot 3-4). The court disregards this assertion inasmuch as the 12(b)(6) standard requires the court to read the complaint in a light most favorable to the plaintiff. See S.C. Dept. of Health & Envtl. Control v. Commerce & Indus. Ins. Co., 372 F.3d at 255.

plaintiffs have been injured as a direct and proximate result of defendants' conduct.  (Compl. ¶¶ 40-41, 43).  Plaintiffs specifically allege that defendants engaged in the following conduct in violation of the statute:

> (a) [m]isrepresentation of pertinent insurance policy provisions relating to coverage;
>
> (b) [f]ailing to acknowledge and act reasonably promptly upon communications with respect to the claims against the plaintiffs;
>
> (c) [f]ailing to adopt and implement reasonable standards for the prompt investigation of claims; [and]
>
> (d) [n]ot attempting in good faith to effectuate prompt [sic] fair and equitable settlement, of claims in which liability has become reasonably clear.

(<u>Id.</u> ¶ 42).[2]

West Virginia is one of few states to recognize a private cause of action under UCSPA.  <u>See</u> <u>Thompson v. W. Va. Essential Prop. Ins. Ass'n</u>, 186 W. Va. 84, 411 S.E.2d 27 (1991) (first party claims), <u>overruled on other grounds by</u> <u>State ex rel. State Farm Fire & Cas. Co. v. Madden</u>, 192 W.Va. 155, 451 S.E.2d 721 (1994); <u>Jenkins v. J.C. Penney Cas. Ins. Co.</u>, 167 W. Va. 597, 820 S.E.2d 252 (1981) (third party claims), <u>overruled on other</u>

---

[2] These allegations generally track the language of West Virginia Code §§ 33-11-4(9)(a), (b), (c), and (f).

grounds by Madden, 451 S.E.2d 721.[3]

To assert a claim under UCSPA, a plaintiff must first demonstrate that the underlying claim has been ultimately resolved. Jenkins, 820 S.E.2d at 253 syl. pt. 2. This does not mean that the plaintiff must wait for the underlying claim to be adjudicated to file his or her action against the insurer. Madden, 451 S.E.2d at 725. Rather, the plaintiff may join the insurer as a defendant in the underlying action, provided the claims against the insurer are bifurcated and discovery is stayed pending resolution of the underlying claim. Id.

Next the plaintiff must demonstrate a violation of the UCSPA. Stonewall Jackson Mem'l Hosp. Co. v. Am. United Life Ins. Co., 206 W. Va. 458, 465, 525 S.E.2d 649, 656 (1999). Few cases exist interpreting the language of UCSPA. Subsection (f) is the most frequently litigated. It prohibits insurance companies from failing to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." W. Va. Code § 33-11-4(9)(f). The West Virginia Supreme Court of Appeals has interpreted a "fair and equitable settlement" to mean a settlement that is made:

---

[3] Third party claims must have accrued before the enactment of West Virginia Code § 33-11-4a in 2005, which eliminated them.

14

> impartially, honestly, and free from prejudice, self
> interest or other improper influence.  Such a
> settlement implies a disposition of a claim for an
> element of damages that has a basis in evidence and in
> reason, and achieves a fitting and right balance of
> considerations that is free from favoritism, and is
> fair and equal to all concerned.

Hicks v. Jones, 217 W. Va. 107, 116, 617 S.E.2d 457, 466 (2005).

        Furthermore, the misconduct violating the UCSPA must

amount to a "general business practice."  Stonewall Jackson Mem'l

Hosp., 525 S.E.2d at 656.  This may be proven in the context of a

single claim by showing:

> that the conduct in question constitutes more than a
> single violation of W. Va. Code § 33-11-4(9), that the
> violations arise from separate, discrete acts or
> omissions in the claim settlement, and that they arise
> from a habit, custom, usage, or business policy of the
> insurer, so that, viewing the conduct as a whole, the
> finder of fact is able to conclude that the practice or
> practices are sufficiently pervasive or sufficiently
> sanctioned by the insurance company that the conduct
> can be considered a "general business practice" and can
> be distinguished by fair minds from an isolated event.

Id.

        The defendants do not dispute the factual sufficiency

of plaintiffs' allegations; rather, the defendants contend that

the UCSPA does not provide the plaintiffs with a cause of action,

and further that plaintiffs' claims are barred by the statute of

limitations.  Turning to the defendants' first contention, the

defendants assert that the UCSPA does not provide a policyholder,

such as plaintiffs, with a cause of action except for "the
policyholder's first party claim or the policyholder's exposure
to extra-contractual liability." (Defs.' Mem. Supp. Mot. 2).
Suffice it to note that the defendants answer their own
contention by conceding that the UCSPA provides, as it does, for
a policyholder's first party claim.  That is precisely the kind
of claim asserted by the policyholder here.

        Defendants also raise the affirmative defense of the
statute of limitations.  Defendants contend that plaintiffs
failed to file their action within one year of resolution of the
underlying action, and thus, that it is time barred.  (Id.).  A
cause of action under UCSPA is subject to a one year statute of
limitations.  W. Va. Code § 55-2-12(c).  The statute of
limitations begins to run at the "ultimate resolution" of the
underlying action, which occurs either at the time of settlement
or at the expiration of the appeals period following court
adjudication.  See Klettner v. State Farm Mutual Auto. Ins. Co.,
205 W. Va. 587, 593, 519 S.E.2d 870, 876 (1999).

        The complaint states that the underlying case was
terminated on or around October 31, 2005, but does not provide a
precise date.  (Compl. ¶ 22).  It is also not clear from the
complaint whether the action was settled or instead terminated by

16

court action, nor is it clear whether an appeal was taken.  Thus,
although the defendants assert in their motion to dismiss that
the underlying action was settled, the court cannot discern with
certainty from the face of the complaint whether the case was
settled or adjudicated, nor is it clear on which calendar day the
statute of limitations began to run.  Inasmuch as the court
cannot reach the merits of an affirmative defense, such as the
running of the statute of limitations, in a motion to dismiss
unless all facts necessary to the defense "clearly appear[] <u>on
the face of the complaint</u>," the court declines to consider
defendants' defense at this time, pending further fact finding on
the timeliness of this action.  <u>Goodman v. Praxair, Inc.</u>, 494
F.3d 458, 464 (4th Cir. 2007).  The court hastens to add that the
timeliness issue is one on which the parties should be able to
stipulate the date as of which the statute of limitations began
to run.

        Having rejected defendants' first contention and
declined to rule on defendants' second, the court turns to the
factual sufficiency of plaintiffs' allegations.  Plaintiffs'
allegations that the underlying action was resolved and dismissed
on or around October 31, 2005, is sufficient to suggest that the
underlying action was ultimately resolved before the institution

of this action as required by <u>Jenkins</u> and <u>Madden</u>.  (Compl. ¶¶ 22-23).  Additionally, plaintiffs' allegations that defendants took little or no action to investigate plaintiffs' claim despite notice of the claim and that defendants failed to attempt to resolve the claim despite numerous opportunities to do so are sufficient to suggest that there may have been a violation of the statute.  (<u>Id.</u> ¶¶ 14-19).  These allegations further suggest, as required by the statute, that the violations "arise from separate, discrete acts or omissions in the claim settlement" such that they amount to a general business practice of unfair claim settlement for purposes of Count III.  (<u>Id.</u>).  Accordingly, plaintiffs have stated sufficient facts to survive a motion to dismiss for failure to state a claim.

D. Community of Interests Theory

     Plaintiffs assert the three causes of action discussed above against all three defendants.  Plaintiffs allege that Mutual is the parent company of defendants Liberty and International.  (Compl. ¶ 4).  Plaintiffs further contend that International provides employees and services to Liberty.  (<u>Id.</u> ¶ 5).  Finally, plaintiffs assert generally that all three defendants share a "community of interest" sufficient to hold

each defendant liable for the acts and omissions of the others.
(<u>Id.</u> ¶ 6).

        Defendants counter that a "community of interest" is
insufficient to hold any defendant other than plaintiffs'
insurer, Liberty, liable.  (Defs.' Mem. Supp. Mot. 5-6).
Defendants correctly state that to hold Mutual and International
liable, plaintiffs must pierce the corporate veil.  (<u>Id.</u> at 7).

        Corporate structures are disregarded only in rare
circumstances.  <u>Laya v. Erin Holmes, Inc.</u>, 177 W. Va. 343, 352
S.E.2d 93 (1986).  The court must consider whether there is "such
unity of interest and ownership that the separate personalities
of the corporation and of the individual shareholder(s) no longer
exist (a disregard of formalities requirement)."  <u>Id.</u>  In <u>Laya</u>,
the court laid out nineteen factors for courts to consider in
making this determination.  <u>Id.</u> at 98-99.  Employment of the same
employees is one of those factors.  <u>Id.</u>  Second, the court must
consider whether "an inequitable result would occur if the acts
are treated as those of the corporation alone (a fairness
requirement)."  <u>Id.</u> at 99.

        Plaintiffs' suggestion that the insurance companies
shared employees and performed services for each other is enough

to satisfy the first prong for the purposes of a motion to dismiss, although it would probably not be enough, alone, to survive summary judgment. See id. at 98-99. However, plaintiffs have failed to offer any facts that would suggest the possibility of an inequitable result if the court were to treat the conduct of Liberty as its conduct alone. See id. at 99. Accordingly, Mutual and International should be dismissed from the action.

IV.

Based upon the foregoing, the court ORDERS that defendants' motion to dismiss be, and it hereby is, granted to the extent it seeks dismissal of Count II of the complaint, alleging breach of the duty of good faith and fair dealing, and Count II is hereby ORDERED dismissed. It is further ORDERED that defendants' motion be, and it hereby is, granted to the extent it seeks dismissal of Liberty Mutual Insurance Company and Liberty International Underwriters as defendants to this action. Defendants' motion is otherwise denied.

Finally, the court notes that the defendants request an award of attorneys fees under Rule 11 of the Federal Rules of Civil Procedure inasmuch as defendants believe that plaintiffs'

allegations are frivolous.  This request is denied without prejudice.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  February 25, 2008

John T. Copenhaver, Jr.
United States District Judge